IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re ENRON CORPORATION | § | |
| SECURITIES, DERIVATIVE & | § | MDL 1446 |
| "ERISA" LITIGATION, | § | |

| | | |
|---|---|---|
| MARK NEWBY, ET AL., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-01-3624 |
| | § | AND CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § | |
| | § | |
| Defendants | § | |

| | | |
|---|---|---|
| STATE OF ARKANSAS TEACHER | § | |
| RETIREMENT SYSTEM, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-0774 |
| | § | |
| MERRILL LYNCH & CO., et al., | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in H-05-774, previously remanded by this Court to the 193rd Judicial District Court of Dallas County, Texas for lack of "related to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b),[1] is Plaintiffs State of

---

[1] See instrument #80. This Court concluded that as a matter of law in the Fifth and Second Circuits, because the Enron reorganization plan had been confirmed on June 15, 2004, before this action was filed on July 16, 2004 in the 193rd Judicial District of Dallas County, the debtor Enron's estate had ceased to exist except for implementation or execution of the plan, and thus the Court's "related to" bankruptcy jurisdiction was severely restricted. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001)(once plan was confirmed, debtor emerged from bankruptcy and there was no estate left to administer so bankruptcy jurisdiction ceased to exist except for matters relating to the implementation or execution of the plan); *In re Brass Corp.*, 301 F.3d 296, 304-05 (5th Cir. 2002). *See also* 11

Arkansas Teacher Retirement System, et al.'s motion for attorneys' fees and costs (instrument #81) under 28 U.S.C. § 1447(c) for an improvident removal.   Plaintiffs claim to have incurred over $700,000 in fees and costs and state that they will seek to recover other costs incurred before the remand order, but not yet billed to Plaintiffs, if the Court grants their motion.

### Applicable Law

Title 28 U.S.C. § 1447(c), which requires remand where the district court lacks subject matter jurisdiction, states that upon a determination that removal was improper, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."   The United States Supreme Court has recently clarified the standard for such an award of fees and costs as "turn[ing] on the reasonableness of the removal."   *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704, 711 (2005).   "Section 1447(c) authorizes courts to award costs and fees, but only when

---

U.S.C. § 1141(b)(except as otherwise provided in the reorganization plan or confirmation order, "the confirmation of the plan vests all of the property of the estate" in the reorganized debtor and thus the bankruptcy estate no longer exists).   Furthermore, the confirmed Enron reorganization plan expressly subordinated indemnification and reimbursement claims such as those brought by Merrill Lynch here; therefore they could not have any impact on the implementation or execution of the Enron reorganization plan so as to support the exercise of "related to" bankruptcy jurisdiction in this Court.   This Court found that the language of the plan and the confirmation order was too broad and indefinite to be construed as extending "related to" bankruptcy jurisdiction over Merrill Lynch's potential claims for contribution and indemnification arising from pre-petition transactions.   Moreover, the Court also found that Merrill Lynch had failed to show why its contribution and indemnification claims were not discharged by the confirmation order.

such an award is just." *Id.* at 710. Finding that the statutory
language and context are somewhat "evenly balanced between a pro-
award and an anti-award position," the Supreme Court opined, "The
appropriate test for awarding fees under § 1447(c) should
recognize [Congress'] desire to deter removals sought for the
purpose of prolonging litigation and imposing costs on the
opposing party, while not undermining Congress' basic decision to
afford defendants a right to remove as a general matter, when the
statutory criteria are satisfied." *Id.* at 710, 711. The Court
held,

> Absent unusual circumstances, courts may
> award attorney's fees under § 1447(c) only
> where the removing party lacked an
> objectively reasonable basis for seeking
> removal. Conversely, when an objectively
> reasonable basis exists, fees should be
> denied. In applying the rule, district
> courts retain discretion to consider whether
> unusual circumstances warrant a departure
> from the rule in a given case. For instance,
> a plaintiff's delay in seeking remand or
> failure to disclose facts necessary to
> determine jurisdiction may affect the
> decision to award attorney's fees. When a
> court exercises its discretion in this
> manner, however, its reasons for departing
> from the general rule should be "faithful to
> the purposes" of awarding fees under §
> 1447(c).

*Id.* at 711.

There is no automatic entitlement to an award of fees
and costs under § 1447(c); rather the statutory language makes
such an award discretionary with the Court. *Valdes v. Wal-Mart
Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). "The application
of § 1447(c) requires consideration of the propriety of the

removing party's actions based on an objective view of the legal and factual elements of each particular case. We evaluate the objective merits of removal at the time of removal, irrespective of the fact that it might ultimately be determined that the removal was improper." *Id.* at 293. In determining whether the removing party had a reasonable belief that removal was proper at the time, the district court may consider the complexity and uncertainty of the law and whether case law clearly demonstrated that removal was not unreasonable. *Id.* The party invoking the court's bankruptcy jurisdiction, here Merrill Lynch asserting post-confirmation subject matter jurisdiction, has the burden of proving that jurisdiction exists. *In re Gurney's Inn Corp. Liquidating Trust*, 215 B.R. 659, 660 (Bankr. E.D.N.Y. 1997).

Moreover, the Fifth Circuit has held that where the district court has determined that the plaintiff is entitled to an award of costs and fees, that award is limited to those incurred in the federal court that would not have been incurred had the case remained in state court.[2] *Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997)("Congress has plainly limited such an award to those costs and fees 'incurred as a result of

---

[2] The *Avitts* panel pointed to the legislative history of § 1447(c) to support its interpretation of the statutory language: "the House Report states that § 1447(c) 'will ensure that a substantive basis exists for requiring payment of actual expenses incurred in resisting an improper removal; civil rule 11 can be used to impose more severe sanction when appropriate.'" 111 F.3d at 32, citing H.R. Rep. No. 100-889, *reprinted in* 1988 U.S.C.C.A.N. 6033. Thus "ordinary litigation expenses that would have been incurred had the action remained in state court are not recoverable because such expenses are not incurred 'as a result of the removal.'" *Id.*

removal.'"), *cited for that proposition in Dimitrijevic v. TV & C GP Holding, Inc.*, No. Civ. A. H-04-3457, 2005 WL 2656256 , *3 (S.D. Tex. Oct. 18, 2005).  Moreover, the number of hours worked and the rates charged must be reasonable and in accordance with the factors laid out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Dimitrijevic v. TV & C GP Holding, Inc.*, No. Civ. A. H-04-3457, 2005 WL 2656256 at *3.

### Procedural History

One day **after** the United States Bankruptcy Court for the Southern District of New York had confirmed Enron's plan of reorganization on June 15, 2004, Plaintiffs, who were limited partners in LJM2 Co-Investment, L.P. ("LJM2"), managed by Enron's CFO, Andrew Fastow,  filed a state-law action in the 193rd Judicial District Court of Dallas County, Texas against a number of Defendants in addition to Defendants Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Incorporated, Merrill Lynch Capital Corp., Merrill Lynch Capital Services, Inc., and Merrill Lynch IBK Positions, Inc. (collectively, "Merrill Lynch"), arising out of their involvement (committing equity capital to, loaning money to, and/or acting as a placement agent to) LJM2 and thereby allegedly participating directly in or providing key assistance to various frauds perpetrated by LJM2.  Merrill Lynch served as the placement agent for certain of the limited partnership interests in LJM2 sold to Plaintiff/investors, so the claims against it are dubbed "placement agent claims" in violation of the Texas Securities Act; Plaintiffs have also alleged fraud, negligent

misrepresentation and breach of fiduciary duty against Merrill Lynch.

On August 30, 2004, Merrill Lynch removed Plaintiffs' state court suit as two separate adversary proceedings, with one containing four of the state action's claims against Merrill Lynch that comprise the instant action, to the United States Bankruptcy Court for the Northern District of Texas on the grounds that they were "related to" the bankruptcy of Enron Corporation.  Merrill Lynch argued that there was "related to" bankruptcy jurisdiction over the proceeding with the four placement agent claims against Merrill Lynch on the grounds that under state law, Merrill Lynch might have statutory and common law rights of indemnity and/or contribution against certain Enron directors and officers involved in LJM2 and because Enron's assets included D&O insurance policies that covered these directors and officers.  Merrill Lynch also filed a Notice of Potential Tag-Along Action with the Judicial Panel for Multidistrict Litigation ("MDL Panel"), seeking a transfer of the placement-agent-claims proceeding to the undersigned judge for consolidation or coordination with MDL 1446. On February 18, 2005 the Panel transferred the removed adversary proceeding here, where it was consolidated with *Newby* and designated H-05-0774.  The Bankruptcy Court remanded the other adversary proceeding to the state court on January 14, 2005.  On April 14, 2005 this Court ordered the placement-agent-claims action "coordinated" with *Newby*. On July 1, 2005 Plaintiffs moved for expedited consideration of their motion for remand, filed

while the suit was in the Northern District of Texas.  On July 1, 2005, the Court granted the remand motion (#80).  *See* footnote 1.

### Plaintiffs' Motion for Attorney's Fees and Costs

Plaintiffs charge Merrill Lynch with a "litigation tactic designed to frustrate, delay and increase the costs of determining the parties' rights."  #81 at 1-2.  Plaintiffs claim that Merrill Lynch deliberately divided Plaintiffs' suit into two adversary proceedings by removing different counts of Plaintiffs' complaint in two separate actions to the United States Bankruptcy Court for the Northern District of Texas.  Merrill Lynch then moved for a stay of Plaintiff's motion to remand in what became this case, and the bankruptcy court for the Northern District of Texas granted the stay in part.  Merrill Lynch also filed the tag-along notice with the MDL Panel and obtained a transfer of part of Plaintiffs' case to this court, according to Plaintiffs, thus "immers[ing] the parties in wholly unnecessary procedural wrangling, frustrating any progress in this case for nearly a year, imposing hundreds of thousands of dollars of costs on Plaintiffs, and wasting the judicial resources of Judge Felsenthal in the Bankruptcy Court for the Northern District of Texas, the MDL Panel and this Court."  Contending that the removal of this action was "entirely dependent on hypothetical contribution and indemnifications claims that had no chance of recovery and were already discharged by Enron's confirmed plan," Plaintiffs maintain that Merrill Lynch incorrectly applied the **pre**-confirmation standard for "related to" bankruptcy jurisdiction, i.e., a

proceeding whose outcome "could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987), *quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). Plaintiffs challenged the transfer order, but the MDL Panel rejected their objections. Plaintiffs now argue that they were forced to litigate numerous issues here at great expense, and through an award under § 1447(c) they seek to recover all fees directly traceable to the removal and their expenses incurred in "keeping abreast of, coordinating, and handling discovery and other matters in the MDL proceeding," indeed for everything that occurred in federal court.

Plaintiffs contend that not only does the post-confirmation standard for "related to" bankruptcy jurisdiction apply to this action, but they emphasize that the Enron reorganization plan did not provide for retention of bankruptcy jurisdiction over this action or over Merrill Lynch's contribution claims. Moreover, Merrill Lynch did not present any reason why its claims were not discharged by Enron's June 15, 2004 Confirmation Order. Because Merrill Lynch should have known all these facts when it filed its notice of removal, argue Plaintiffs, it had no reasonable basis to remove this case from state court.

### Merrill Lynch's Opposition

In its preliminary statement, Merrill Lynch argues that Plaintiffs have failed to show that it was "obvious" that the Northern District of Texas did not have "related to" bankruptcy jurisdiction over their claims against Merrill Lynch. *Moody Nat'l*

*Bank of Galveston v. St. Paul Mercury Ins. Co.*, 193 F. Supp. 2d 995, 1002 (S.D. Tex. 2002).  Merrill Lynch questions why one of Plaintiffs' lead lawyers claims to have spent over 30 hours at $495 an hour researching and drafting a "memo on removal issues" if the removal was not reasonable.  Ex. C at 1-2, attached to Affidavit of Vincent T. Chang, attached to #83.

In its Argument section, Merrill Lynch observes that the issue is not whether it was correct in its basis for removal, but whether it was objectively unreasonable in removing this action to federal court.  Nevertheless it relies on Fifth Circuit cases which were issued before the Supreme Court's *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704 (2005) and some of which may no longer be good law.  For instance Merrill Lynch correctly asserts that bad faith by the removing party need not be shown; but it also argues that the nonremovability of the action must be obvious to support an award of fees and costs under § 1447(c).  *Moody*, 193 F. Supp. 2d at 1002, *citing In New-Texan, Inc. v. City of Garland*, 814 F.2d 216, 220 & n.10 (5th Cir. 1987)(citing 14 A C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure*: Jurisdiction 2d § 3739 at 586-87 (1985)("assessing costs is appropriate 'when the nonremovability of the action is obvious'").  In light of the Supreme Court's more nuanced standard in *Martin* (where the removing party lacked an objectively reasonable basis for seeking removal), this Court questions the viability of a solely "obvious" test.  More appropriate is the holding in *Erlandson v. Liberty Life Assurance Co. of Boston,* 320 F. Supp. 2d 501, 511 (N.D. Tex.

2004):  "When removability of the case is plausible, a district court should deny costs and fees."  The Court also agrees with Merrill Lynch that a determination that the removal was legally improper, alone, does not entitle the plaintiff to an award of fees.  *Valdes*, 199 F.3d at 292.

Merrill Lynch insists that it did not ignore the fact that the Enron plan had been confirmed when it removed the instant action.  It notes that it submitted a full section of its Memorandum of Law in Opposition to Plaintiffs' Motion for Remand to argue that the confirmation did not preclude the exercise of "related to" bankruptcy jurisdiction (#20 at 23-26), based on claims filed in the Enron bankruptcy proceeding and on orders of this Court in MDL 1446.  It argued for the application of the pre-confirmation "conceivable effect" standard, which was recently applied by a district court in the Southern District of New York to post-confirmation cases.  *Nachom v. Citigroup, Inc. (In re Global Crossing Ltd. Sec. Litig.),* No. 02 Civ. 910 (GEL), 2003 WL 22705127, *1-2 (S.D.N.Y. Nov. 14, 2003).

Merrill Lynch further contends that even if Plaintiffs are entitled to an award of fees and costs, Plaintiffs' request covers tasks that do not fall within the statute's reach: discovery that would have been incurred without removal, unsuccessful and unreasonable opposition to the transfer of this action from the Northern District of Texas to this Court by the MDL Panel, and other tasks that would have to be done even if Merrill Lynch had not removed this action.  In turn, Merrill Lynch

contends that Plaintiffs' claims against it are without merit, that Plaintiffs have already recovered approximately 90% of their collective investment in LJM2, that Plaintiffs have delayed adjudication of this action, and that Enron Bankruptcy Examiner Neal Batson concluded that there was "no evidence . . . that would indicate Merrill Lynch had any role in the day-to-day operations of LJM2 or in the selection or approval of the transactions entered into by LJM2" and that its role was limited to that of a "passive limited partner/investor."

### Court's Decision

First, this Court disagrees with Merrill Lynch that the rule in the Second Circuit regarding "related to" bankruptcy jurisdiction post confirmation is the *Pacor* "conceivable effects" test.

While there is substantial variation among courts on the issue,[3] Merrill Lynch acknowledged that this Court has concluded that Second Circuit law controls "related to" bankruptcy jurisdiction in this multidistrict litigation because the Enron bankruptcy proceeding was filed in the Southern District of New York. This Court now concludes that *Nachom v. Citigroup, Inc. (In re Global Crossing Ltd. Sec. Litig.)*, 2003 WL 22705127, *1-2, relied on by Merrill Lynch, does not follow the Second Circuit's rule for post-confirmation "related to" bankruptcy jurisdiction.

---

[3] *Collier on Bankruptcy*, ¶ 1142.04, at 1142 (Lawrence P. King, ed. 15th 3d. 2000)("The extent to which the bankruptcy court can or should exercise post-confirmation jurisdiction is an issue that has long troubled the bankruptcy court system.").

"'After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.'" *In re Sunbrite Cleaners, Inc.*, 284 F.R. 336, 340 (N.D.N.Y. 2002), *quoting In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir. 2001).  As noted by this Court in instrument #80, the Second Circuit has held, "A bankruptcy court retains jurisdiction only to the extent provided in the plan of reorganization." *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993)(quoted in *Northwood Estates v. Evergreen Bank, N.A.*, 114 Fed. Appx. 416, 416 (2d Cir. 2004)); *Falise v. American Tobacco Co.*, 241 B.R. 48, 58 (E.D.N.Y. 1999)("The confirmation of the plan in a Chapter 11 reorganization generally terminates the debtor's estate" unless otherwise provided in the plan); *Sunbrite*, 284 B.R. at 339-40.[4]   There is no dispute that Enron's reorganization plan was confirmed on July 15, 2004, one day before

---

[4] In contrast, the Fifth Circuit has concluded that "the source of the court's subject matter jurisdiction is neither the Bankruptcy code nor the express terms of the Plan," but only 28 U.S.C. § 1334.  Some courts have concluded that because the statute does not expressly limit subject matter jurisdiction after confirmation of a Chapter 11 plan or reorganization, a post-confirmation claim need only fall within the scope of the courts' original "related to" jurisdiction, which most interpret as the *Pacor* "conceivable effect" test.  *See, e.g., U.S. Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999).  The Fifth Circuit interprets the scope of post-confirmation jurisdiction more narrowly.  *In re Craig's Stores*, 266 F.3d at 391 (rejecting post-confirmation use of the "expansive" *Pacor* standard in favor of a more "exacting theory of post-confirmation bankruptcy jurisdiction," because once the plan is confirmed, debtor has emerged from bankruptcy and there is no estate left to administer).  Thus under either the Second Circuit's or the Fifth Circuit's established standards, Merrill Lynch's removal was not proper.

Plaintiffs filed this suit in state court.  Because Merrill Lynch was involved in the bankruptcy proceeding, it had notice of that confirmation.

The plan does not contain a specific jurisdiction-retention clause, a prerequisite in the Second Circuit for post-confirmation assertion of bankruptcy jurisdiction.  Bankruptcy courts do have the authority to implement and execute the confirmed plan as part of their inherent power to enforce their own orders.  *In re Aston Baker*, No. CV05-3487 (CPS), 1-01-24227 (DEM), 2005 WL 2105802, *5 (E.D.N.Y. Aug. 31, 2005), *citing In re Chateaugay Corp.*, 213 B.R. 633, 640 (S.D.N.Y. 1997)(stating that section 1142 codifies the Bankruptcy Court's power to enforce its own sale orders), and *In re Johns Manville Corp.*, 97 B.R. at 179-80 (enforcing injunction in the plan or reorganization because "the bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders in aide of their proper execution").  Merrill Lynch points to its opposition to the motion to remand (#20 at 2326), where it maintained that it had reasonably argued that the Enron reorganization plan incorporated claims already filed by Enron officers and directors for contribution and indemnity resulting from Enron-related litigation, and thus distribution in connection with those claims relates to the implementation or execution of the plan over which the Court does have bankruptcy jurisdiction.  Those claims were not discharged by the plan.  Section 42.3 provides that after all proofs of claim are resolved and payments made to holders, Enron's

liability for claims that arose before the confirmation date is discharged. Although Section 17.1 provides for subordination of the director and officer claims, Section 17.2[5] provides for a possibility of recovery). Merrill Lynch also argued that it is premature to assume that there would never be sufficient assets in the estate for distribution.

Enron's reorganization plan does contain a general provision in Article 38.l(j)("to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the plan"). The *Falise* bankruptcy court concluded that such vague language "should be read narrowly to ensure that the bankruptcy court's role is appropriately as limited as practicable after confirmation." 241 B.R. at 59. In remanding the case (#80 at 26), this Court found that "the broad, indefinite language in the [Enron] plan and confirmation order regarding retention of jurisdiction is far too general to interpret as extending 'related to bankruptcy jurisdiction to cover potential claims for contribution that arise from pre-petition transactions." Moreover since the contribution claims against Enron were designated as subordinated claims in the reorganization

---

[5] Section 17.2 provides, "[I]n the event that Plan Currency and Trust Interests are deemed redistributed to a holder of an Allowed Subordinated Claim in accordance with the provisions of Sections 7.5, 8.2, and 9.2 of the Plan, such redistribution shall be made to holders of Allowed Subordinated Claims and Allowed Equity Interests in the following order."

plan (#80 at 26-27), this Court found that "there is virtually no chance of recovery" and that these claims could "not have an impact on the implementation or execution of the . . . plan to support the exercise of "related to bankruptcy jurisdiction . . . ."

Finally, Merrill Lynch's reliance on statements in previous orders of this Court in MDL 1446 is inapposite because those orders addressed pre-confirmation "related to" bankruptcy jurisdiction.

For the same reasons, under established law in both the Second and Fifth Circuits, the Court finds that Merrill Lynch did not have a reasonable basis for removal of this suit.

Nevertheless, the Court agrees with Merrill Lynch that Plaintiffs are not entitled to fees and costs for all that occurred during and after the removal, i.e., the transfer of the suit by the MDL Panel, costs of discovery, and other services that would have to have been provided in the natural prosecution of the suit in another forum.   While discovery may have been more expensive because of the MDL Panel's transfer, it probably provided more extensive information to Plaintiffs.   More important, the transfer was the decision of the independent MDL Panel and the consequences should not be charged against Merrill Lynch.

Accordingly, the Court

ORDERS that Plaintiffs' motion for fees and costs is GRANTED as to the cost of opposing the removal and filing the

motion for remand and supporting briefs only.  Plaintiffs' shall file a specific request for reasonable and necessary costs and fees with supporting affidavit and documentation, in compliance with the requirements of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, within twenty days of receipt of this order. Defendants may file a response within ten days of that filing.

**SIGNED** at Houston, Texas, this 21st day of November, 2006.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE